# H. M. MERIWETHER, Appellant, v. JOSEPH OVERLY.

### Division Two, May 26, 1910.

1. **LIMITATIONS: Tax Deed: Three Years.** Under the charter of Kansas City and section 222 (221) of the Revenue Act of 1872, Laws 1872, p. 130, which is still in force, a suit to defeat or avoid a tax deed is barred in three years. Said section 222, though omitted from the Revised Statutes of 1879, 1889, and 1899, has never been repealed, either by an express enactment or by a revised bill, and consequently is still in force, and the section of the Kansas City charter in similar language is therefore not "inconsistent with the general laws of this State."

2. ———: ———: **One Year After Nonsuit.** The general statute (Sec. 4285, R. S. 1899) permitting a new suit to be brought within one year after nonsuit, "if the action shall have been commenced within the times respectively prescribed in this chapter," does not apply to a suit to avoid a tax deed. That chapter says nothing about when a suit may be brought to avoid a tax deed. Such a suit is barred by the section in the Revenue chapter which says it must be brought within three years after the tax deed is recorded. So that where plaintiff brought suit in ejectment and suffered nonsuit, a subsequent suit to quiet title, brought within one year after the nonsuit but more than three years after the tax deed was recorded, is not saved by the one-year nonsuit statute.

3. ———: ———: **Void on its Face.** But the special Statute of Limitations limiting to three years a suit to avoid or defeat a tax deed, has no application if the tax deed is void on its face. If void on its face the suit is not barred in three years.

4. **VOID TAX DEED: At Adjourned Sale: No Recitals of Adjournment or Notice.** A tax deed that recites that the land was sold "at an adjourned sale," but does not recite on what day the sale was adjourned, nor the reason for the adjournment, nor that notice of the adjournment was given at the time of the adjournment, nor that notice of said adjournment and the day to which was kept posted in a conspicuous place in the office of the city treasurer, as the charter requires, is void on its face. And a deed which recites that: "And, whereas the city treasurer of said Kansas City did, on the 6th day of November, A. D. 1897, by virtue of the authority in him vested by law,

at (an adjourned sale) the sale begun and publicly held on the first Monday of November, A. D. 1897, the first day on which said real property was advertised for sale, expose to public sale at the office of the city treasurer," the first Monday being November 1st, and the 6th being Saturday, is void on its face.

5. ———: Assessment Notice: Numerical Order of Lots. The Kansas City charter requires lots to be listed for taxation in tabular numerical order, and that in the notice of delinquent taxes to be published in the newspapers the lots shall be arranged in consecutive numerical order. *Held*, that any material departure from those requirements renders the tax deed void. The listing of lot 67 in the land tax book after lot 70 and nine pages further on in the book, and the placing of lot 67 in the published notice after lot 122, rendered the tax deed void as to lot 67.

6. LACHES: Notice of Plaintiff's Title: Improvements. Where defendant had actual notice of plaintiff's recorded deed and must also be held to have known that his own tax deed was void on its face, and made no lasting or valuable improvements on the property, and had no real possession thereof, plaintiff's delay in bringing the suit does not constitute laches.

7. ———: Paying Taxes. Defendant's voluntary payment of taxes before they become due, or before he had any deed for the property, does not charge the real owner with laches.

8. ———: ———: Abandonment. The delay by the purchaser at a sheriff's sale under a judgment on a special taxbill in getting a deed for thirteen months after he was entitled to a deed, and permitting the grantee in a tax deed to pay the state, county and city taxes on the property from the time the suit for special taxes was started until the deed was made to said purchaser, are not such neglect or delay as amounts to an abandonment of the property.

9. SHERIFF: Out of Office: Power to Make Deed: Special Tax Sale. Where a valid judgment has been rendered against property on a special taxbill and made a lien on the property, and it has been sold, and the charter provides that no deed shall be made to the purchaser until one year after such sale, the deed should be made by the sheriff who is in office when the deed is made, and not by the sheriff who made the sale but who in the meantime has gone out of office. The power to make the deed pertains to the officer, and not to the man.

10. **QUIETING TITLE: Adjusting Taxes.** Under the Act of 1903, Laws 1903, p. 254, which is a constitutional statute, the court, in a suit to quiet title, may adjust the state, county and city taxes, and may, as a price of plaintiff's right to recover, require him to reimburse defendant for the taxes paid by him in good faith; but those taxes paid by defendant after he knew plaintiff was the owner were voluntarily paid, and defendant should not be reimbursed for them.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED AND REMANDED (*with directions*).

*Denham & Denham* and *H. M. Meriwether* for appellant.

(1) Plaintiff showed perfect title to the property in dispute unless defeated by defendant's tax deed. A sale of real estate for the collection of taxes being practically a proceeding *in rem* to fix a lien upon the property, it is essential that all the records and proceedings therewith describe the property in a definite manner. O'Day v. McDaniel, 181 Mo. 529; State ex rel. v. Railroad, 114 Mo. 1; Dickinson v. Arkansas City, 92 S. W. 21; Buckner v. Sugg, 96 S. W. 186; Roth v. Galbert, 123 Mo. 21; Keith v. Hayden, 26 Minn. 212; Ratliff v. Stretch, 117 Ind. 532. (2) Defendant's tax deed is void for the reason that the following provisions of the charter of Kansas City were not complied with: (a) "The assessor shall return on his assessment book of real property, in tabular form, each parcel of real estate subject to taxation, with the description and value thereof in numerical order as to lots and blocks, or in sections or subdivisions thereof, and in a separate column the valuation attached by the assessor to each parcel or description." Sec. 14, art. 5, Charter. (b) Section 67, art. 5, of said charter repeats the same requirements as above stated and also says: "In describing real estate for any purpose contemplated in this charter, any lot or tract may be described, as far

as practicable, by reference to or according to any map or plat or the record of same in the recorder's office of Jackson county, Missouri, on which the lot or tract may be shown or designated. Lots or tracts covered by or shown on any such map or plat or record thereof, shall as far as practicable be described consecutively in any assessment, land tax book, notice, advertisement and book of sales.'' (3) Where a sale is made at an adjourned tax sale, the reason for such adjournment must be set forth in the deed. Gregg v. Jesberg, 113 Mo. 40. (4) In a proceeding under section 650, R. S. 1899 (as this is), no adjustment of tax payments can be made.· Rowe v. Current River, 99 Mo. App. 163; Seidel v. Cornwell, 165 Mo. 55; Wilson v. Lubke, 176 Mo. 217.

*N. F. Heitman* for respondent.

(1) The principle on the strength of which the respondent won in the lower court, and because of which the decree of the lower court ought to be affirmed, is expressed in Baker v. Cunningham, 162 Mo. 145. Cockrill v. Hutchinson, 135 Mo. 75; Jandrum v. Bank, 63 Mo. 48; Davidson v. Mayhew, 169 Mo. 258; Ready v. Smith, 170 Mo. 174. If a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. Especially is this true in special taxbill proceedings. Herman on Estoppel, sec. 1221, p. 1360, and sec. 1063, p. 1194; 16 Cyc. Law and Pro., p. 150; Bouvier's Law Dictionary under the word "laches." Equity does not encourage stale claims or give relief to those who sleep upon their rights. 12 Am. and Eng. Ency. Law (1 Ed.), 533; 18 Am. and Eng. Ency. Law (2 Ed.), pp. 96 and 110. The certificate of purchase was issued December 5, 1896. The O'Neill sheriff's deed was not obtained until August 21, 1903—an unreasonable delay of nearly seven years. This was laches—palpable laches. Cockrill v. Hutchinson, 135 Mo. 75; Ready v.

Smith, 170 Mo. 174; In re Koenig, 127 Fed. 891; Wilson v. Smith, 117 Fed. 707; 18 Am. and Eng. Ency. Law (2 Ed.), p. 110. Appellant and his assignor are presumed to know the law, that O'Neill was the only sheriff who could make the deed. Swilley v. Watson, 36 Tex. Civ. App. 583; Gibbons v. Co., 98 N. Y. App. Div. 284. The laws assist the vigilant, not those who sleep on their rights. Broom's Legal Maxims (8 Ed.), 892. (2) The city tax deed is good. Appellant's objections to it are technical, and are not well founded. (a.) The description is good. (b.) The objection relative to the right of way is not tenable for reason that the right of way had long been abandoned. Investment Co. v. Railroad, 108 Mo. 50. (c.) This land was a rough hillside. It was not platted in the ordinary sense. It was an irregular tract. Therefore there is nothing in the objection as to numerical order. This land is on the north bluff of Kansas City. The lot 67, Hurck's subdivision of Guinotte Bluff, was such a large tract on the bluff hillside that in the ordinary sense it cannot be said that this land was platted. These big lots on the bluff came to be divided into what are known as irregular tracts. The objection as to numerical order is purely technical and without merit. (d.) The objection that the words in parentheses in the tax deed (an adjourned sale) make the deed void, is not well founded, because the sale began on the 1st of November, and this sale took place on the 6th of November. There was in fact no adjournment. The only error was the clerical one of not striking a pen through these words in preparing the deed. In the case relied on, Gregg v. Jesberg, 113 Mo. 34, the sale did not take place until the 20th of January, 1887. It appears on the face of the thing in this case that this sale took place at the regular sale. In that case it was apparent on the face of the thing that it did not take place at the regular sale. The only error here is the clerical mistake of not running the pen through the

words (an adjourned sale). The lower court was right in refusing the declarations of law which raised the foregoing objections to the city tax deed. (3) The three-year Statute of Limitations is against the appellant. Sec. 60, art. 5, Charter. The tax deed was recorded December 21, 1899. This suit was not commenced until October 13, 1903, a period of much more than three years. The so-called ejectment suit does not save the running of the statute. Anthony v. Wessell, 9 Cal. 103; Land & Lumber Co. v. Franks, 156 Mo. 689; People v. Boring, 8 Cal. 407; In re Guenzer, 70 Mo. 39; Gorman v. Wing, 10 Mich. 494; R. S. 1899, sec. 3216; Charter, sec. 18, art. 9. The Stone deed counts for absolutely nothing. Appellant cannot take advantage of his own wrong in not getting deed from proper sheriff until after statute had run. The proper sheriff's deed was not executed and delivered until nearly seven years after the date of the certificate of purchase. The charter says that the deed shall be issued "at the end of one year," not at the end of seven years. Charter, sec. 18, art. 9. This delay was unreasonable and constituted laches. The certificate is dated December 5, 1896, the O'Neill deed is dated August 21, 1903. Not "at end of one year," but at end of nearly seven years. Such lack of diligence is not lawful in the enforcement of a special taxbill as against a man who has borne the burden of general taxes for nearly twelve years.

FOX, J.—On October 13, 1903, the plaintiff brought suit in the circuit court of Jackson county to quiet title to the following lands: "Beginning at the southeast corner of lot 67, Hurck's subdivision of Guinotte's Bluff; thence west along the south line of said lot 200 feet; thence north 180 feet; thence west 100 feet; thence north 164.67 feet; thence east 275 feet; thence south 125 feet; thence east 25 feet; thence south 219.67 feet, to the beginning, being a part of lot

67, Hurck's subdivision of Guinotte's Bluff, an addition to Kansas City, Missouri."

The petition closes with the prayer that the court "ascertain and determine the estate, title and interest of the plaintiff and defendant, respectively, in and to such real estate, and to define and adjudge by its judgment and decree the estate, title and interest of the parties severally therein, as provided by section 650, Revised Statutes 1899."

The answer was first a general denial, then a plea that the defendant was the owner of the property in fee simple by virtue of a tax sale for city taxes of Kansas City, made by the city treasurer on the sixth day of November, 1897, and a deed in pursuance to said tax sale made on December 18, 1899. It also pleads that defendant, since said tax sale, has paid taxes on said land since the year 1893 up to the year 1901. It also pleads the Statute of Limitations as a bar to the suit, and pleads laches.

The facts are about as follows:

Plaintiff's title is derived through a certain judgment upon a special taxbill for the building of a sewer. In 1892 twelve persons, among them Thomas King, who is admitted to have been the owner of the property in suit, brought suit to have declared void the ordinance establishing the sewer district and providing for the construction of a sewer therein. The defendants were Duer, the contractor, and the International Loan & Trust Company, to whom the taxbills had been assigned. Judgment therein was rendered in favor of plaintiff, and the cause was appealed to this court. [Johnson v. Duer, 115 Mo. 366.] That judgment was reversed on the appeal, and the taxbills were sustained. Thereafter suit was brought on the special taxbills, and judgment was rendered in behalf of plaintiffs therein. Execution issued for the enforcement of the judgment on the taxbills, which amounted to $2582, and on December 5, 1896, under and pursuant to the special ex-

ecution in that cause John P. O'Neill, sheriff of Jackson county, sold the property to the International Loan & Trust Company, and issued to said Trust Company a sheriff's certificate of sale, which was filed for record and duly recorded on February 10, 1897. The property not having been redeemed from the sale, on the 18th day of January, 1899, Robert S. Stone, who had then become the sheriff of Jackson county, executed a sheriff's deed conveying the property to the said Trust Company, and this deed was recorded on January 31, 1899. On the 12th day of November, 1900, said Trust Company, by a deed admitted to be good and sufficient, conveyed all of its right and title to the said property to plaintiff herein, and in September, 1901, he filed suit in ejectment in the circuit court of Jackson county against the defendant to recover the property, but upon a ruling by the trial court that the sheriff's deed to the Trust Company should have been made by John P. O'Neill, who had gone out of office, and not by Robert S. Stone, who was the sheriff at the time the deed was made, plaintiff took a nonsuit on the 15th day of October, 1902, and the cause seems to have been dismissed without prejudice. Thereafter the plaintiff, on August 21, 1903, obtained from the said John P. O'Neill, ex-sheriff, a deed to said property, based upon the original certificate of sale, and on the 13th day of October, 1903, instituted this suit.

At the trial plaintiff presented in evidence the sheriff's certificate of sale, the deed from Stone to the Trust Company, the deed of assignment from the Trust Company to plaintiff, and the deed from O'Neill to plaintiff, all of which are in regular form. Plaintiff also introduced in evidence the judgment upon the tax-bill and the execution issued thereon, and his petition in the former suit against this defendant, which shows that it had been filed on September 24, 1901; and also the record of the court in said cause showing that on

Wednesday, October 15, 1902, plaintiff in said eject- ment suit took a nonsuit and dismissed his action against the defendant. He also showed that at the time of the trial he was in possession of a part of the property and had been since October, 1903. When he took possession the property was vacant, and he built a substantial fence, with heavy posts and four wires, inclosing a part of it, and leased the property to a tenant under a written lease and that tenant was still in possession at the time of the trial. The taxes for a part of the time were listed against the plaintiff in the regular tax list delivered to the county collector and the city treasurer, but plaintiff testified that often before the taxes were delinquent when he went to pay them he found they had already been paid.

The defendant claims through a tax deed issued by the city treasurer of Kansas City for taxes for the year 1897. At the trial, over the objection of plaintiff, defendant introduced the tax deed in evidence. That deed is in the following words:

"CITY TAX DEED.

"Know All Men by These Presents, that, whereas, the following described real property, viz.:

"Beginning at southeast corner lot (67) sixty- seven, Hurck's Subdivision of Guinotte Bluff; thence north (219.8) two hundred and nineteen and eight- tenths feet; thence west (25) twenty-five feet; thence north (125) one hundred and twenty-five feet to north line of said lot; thence west to northwest corner of said lot; thence south (164.7) one hundred and sixty- four and seven-tenths feet; thence east (100) one hun- dred feet; thence south (180) one hundred and eighty feet to a south line of said lot; thence east to begin- ning. Except a strip of land (20) twenty feet wide across this piece commencing (110) one hundred and ten feet north of southeast corner of said lot.

"Right-of-way of Union Railway Company.

"Hurck's Subdivision of Guinotte Bluff, situated in Kansas City, in the county of Jackson and State of Missouri, was subject to taxation for the year (or years) A. D. 1897, and, whereas, the taxes assessed upon the said real property for the year (or years) aforesaid, remaining due and unpaid at the date of the sale hereinafter mentioned, and whereas, the city treasurer of said Kansas City did, on the 6th day of November, A. D. 1897, by virtue of the authority in him vested by law, at (an adjourned sale) the sale begun and publicly held on the first Monday of November, A. D. 1897, the first day on which said real property was advertised for sale, expose for public sale at the office of the city treasurer, in Kansas City aforesaid, between the hours of ten o'clock in the forenoon and five o'clock in the afternoon, in conformity with all the requisitions of the law in such cases made and provided, the real property above described, for the payment of taxes, interest and costs then due and unpaid upon said real property, and, whereas, at the place aforesaid, I. R. Boyer, of the county of ——— and State of ———, having offered to pay the sum of fourteen dollars and forty-six cents, being the whole amount of taxes, interest and costs then due and remaining unpaid on said real property, for the whole of above described property . . . .

"Hurck's Subdivision of Guinotte Bluff, which was the smallest portion bid for, and payment of said sum having been made by him to said city treasurer, the said property was stricken off to him at that price, and,

"Whereas, the said ——— did, on the —— day of ———, A. D. ——, duly assign the certificate of purchase of the property as aforesaid, and all his right, title and interest in said real property, to ——— of the county of ——— and State of ———, and

"Whereas, two years have elapsed since the first day on which said real property was advertised for

sale, and said property has not been redeemed therefrom, as provided by law, and

"Whereas, the city treasurer of Kansas City aforesaid, did, at least four months before the expiration of the time for redeeming said real property, publish a notice as required by law, in such cases made and provided, that unless said real property was redeemed on or before the day limited therefor, it would be conveyed to the purchaser or his heirs or assigns.

"Now, therefore, I, J. Scott Harrison, Jr., city treasurer of Kansas City, county and State aforesaid, for and in consideration of the sum of fourteen dollars and forty-six cents, taxes, interest and cost due on said real property for the year (or years) A. D. 1897, to the city treasurer of said Kansas City, paid as aforesaid, and by virtue of the law in such cases made and provided, have granted, bargained and sold and by these presents do grant, bargain, sell unto the said I. R. Boyer, his heirs and assigns, the real property last hereinbefore described, to have and to hold unto him, the said I. R. Boyer, his heirs and assigns forever, subject, however, to all the rights of redemption provided by law.

"In Witness Whereof, I, J. Scott Harrison, Jr., city treasurer of Kansas City aforesaid, have hereunto subscribed my name and affixed the corporate seal of Kansas City, this 18th day of December, A. D. 1899.

"J. SCOTT HARRISON, JR.,

"City Treasurer of Kansas City."

(Duly acknowledged and recorded on Dec. 21, 1899.)

Defendant also offered in evidence deed from Boyer dated March 30, 1901, conveying said property to defendant. He also testified that he had paid the taxes for some of the years between 1893 and 1901, but the evidence as to just what years he paid the taxes and how much each year is not clear.

Upon this evidence the court rendered judgment for defendant and plaintiff appealed to this court in the proper time and due form.

## OPINION.

It will be seen from the foregoing statement that plaintiff was entitled to judgment unless the tax deed to Boyer was a valid deed, or admitting it is valid unless plaintiff is barred by limitations to question its validity, or if those questions should be decided in plaintiff's favor, unless he is not entitled to maintain this suit because of his laches pleaded.

## I.

The first question is the one of limitations. Section 60, article 5, of the charter of Kansas City, reads: "Any suit or proceeding by or against the purchaser at a tax sale, his heirs or assigns, for the recovery of the real property, or any interest therein, sold for taxes, or any suit or proceeding to defeat or avoid a sale or conveyance of real property sold for taxes under the provisions of this article, shall be commenced within three years from the time of recording of the tax deed, and not thereafter."

This section of the charter is almost in the exact words of section 66 of article 6 of the charter granted by the General Assembly to the City of Kansas, March 24, 1875. [Laws 1875, p. 239, sec. 66.]

Section 222 [221] of the General Revenue Act of March 30, 1872, Laws 1872, p. 130, says that "any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of land for taxes . . . shall be commenced within three years from the time of recording the tax deed, and not thereafter.'" This section, 222, was not carried forward into the Revised Statutes of 1879, or of 1889, or of 1899, but the chapter on Revenue, as it appears in these revisions,

was not revised in 1879, '89 or '99, nor at any other time, and this section has never been expressly repealed. The revision committees have for some reason (which is not apparent from an inspection of the laws) omitted it from the Revised Statutes, but that fact did not operate to repeal it. In Bird v. Sellers, 122 Mo. 23, in an opinion by Brace, J., it was held that this section is still in force. That being the case, it cannot be held that the section of the charter requiring "a suit or proceeding to defeat or avoid a sale or conveyance of real property sold for taxes under the provision" of the Kansas City charter to be "commenced within three years from the time of recording of the tax deed, and not thereafter," is inconsistent with the general laws of this State. It may impress the legal mind as being anomalous and inexplicable that, whereas an action attacking the validity of almost any other deed may be brought at any time within ten years, a suit attacking a tax deed is barred after three years; yet the courts must accept the statutes as they find them and if they are not unconstitutional and have not been repealed, either expressly or by other general statutes *in pari materia* or in the process of revision, the courts are bound to enforce them. So holding, we dispose of the question of limitations in this case upon the theory that section 60 of article 5 of the Kansas City charter, limiting to a period of three years a suit to defeat or avoid a tax deed, is a valid enactment.

Admitting said charter provision is a valid enactment, has plaintiff avoided its legal effect by bringing suit within three years, taking a nonsuit therein, and then bringing this suit within one year? We think not. The tax deed was recorded December 21, 1899. In September, 1901, plaintiff brought a suit in ejectment against this defendant for this identical land, and at the trial of that suit on October 15, 1902, plaintiff took a nonsuit, without prejudice, upon a ruling by the trial court that the deed by Stone, the sheriff in office,

to the Trust Company, plaintiff's assignor, made in January, 1899, in pursuance to a levy of execution and sale by O'Neill in December, 1896, was invalid. That ruling, as we shall attempt to demonstrate further on, was erroneous, but it defeated plaintiff's case at that time, and he accordingly took a nonsuit. Afterwards he obtained a deed directly to himself, as assignee of the sheriff's certificate of purchase and as grantee, from O'Neill, who had then gone out of office, and then, on October 13, 1903, he brought this suit. Thus he brought this suit in less than one year after he took a nonsuit in the other, and the first suit was brought less than two years after the tax deed under which defendant claims title was recorded, and the nonsuit was taken in less than three years after the tax deed was recorded, but this suit was not brought within three years after that deed was recorded.

Section 4285, Revised Statutes 1899, provides that "if any action shall have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit . . . such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered." In Karnes v. Ins. Co., 144 Mo. l. c. 419, this court said that this section "is a saving clause to prevent the bar which would otherwise be applicable. It does not purport to limit the time for bringing suits, but to save from the statute, for one year after nonsuit, actions which, but for its provisions, would be barred. It extends the time in case of a nonsuit." There are other decisions of this court to the same effect. But that statute and those decisions are not applicable to this case. That statute (Sec. 4285) says: "If any action shall have been commenced within the times respectively prescribed in this *chapter,*" etc. There is nothing in the chapter (Ch. 48, R. S. 1899) which says when a suit to avoid a tax deed shall be brought. Section 4292, Revised Statutes 1899, which is a part of the same chap-

ter, says that "the provisions of this chapter-shall not. extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute."

In DeBoth v. Rich Hill Coal & Mining Co., 141 Mo. 497, this court had under consideration the Act of 1891, Laws 1891, p. 182, which required that all suits brought under the article of which it was an amendment "shall be commenced within one year after any cause of action shall have accrued under this article, and not afterward." In that case a coal miner had sued for damages for personal injuries. The suit was brought within one year, but on account of an adverse ruling against the admission of evidence, plaintiff was forced to take a nonsuit, and within six days, but more than one year after the cause of action had accrued, he brought another action, and the court held that the suit was barred, and it was expressly ruled that "the time in which such actions must be brought is prescribed by the Act of 1891, and not by the general Statute of Limitations." To the same effect are Gerren v. Railroad, 60 Mo. 405; Davenport v. Hannibal, 120 Mo. 150, and Wilson v. Knox County, 132 Mo. 387. We are forced, therefore, to the conclusion that section 4285, Revised Statutes 1899, which refers to a renewal suit after nonsuit, has no application to this action, and that this suit is barred by the limitation section of the Kansas City charter, namely, section 60 of article 5, unless the tax deed is plainly void on its face.

In Callahan v. Davis, 90 Mo. l. c. 85, this court held that "a tax deed void on its face will not set in motion the three-year limitation, though the purchaser takes and holds possession under it." In Duff v. Neilson, 90 Mo. l. c. 97, it was held that "since the deed was void, by reason of the foregoing matters, the special Statute of Limitations would not run." In Mason v. Crowder, 85 Mo. 526, it was held, after mature deliberation, that a tax deed, void upon its face, does not

constitute color of title, even when the purchaser "holds continuous possession under it for the period of three years" after it is recorded, and that "the special Statute of Limitations has no application except where the tax deed is valid upon its face."

In Dameron v. Jamison, 143 Mo. 483, defendant relied upon a tax deed and section 222 of the Revenue Law of 1872, which declares that suits against tax purchasers shall be commenced within three years from the time the tax deed is recorded, and not thereafter. The deed in that case was recorded February 22, 1877, and the suit was brought on March 18, 1891. The court said at page 490: "The deed being void on account of the omission of necessary recitals, defendant wholly failed to come within the protection of the statute." To the same effect are Callahan v. Davis, 125 Mo. 27; Kinney v. Forsythe, 96 Mo. 414; Pitkin v. Reibel, 104 Mo. 505, and Hopkins v. Scott, 86 Mo. 140.

In view of these unanimous holdings of this court through many years, we hold that plaintiff is not barred by limitations to maintain this suit if the defendant's tax deed is void upon its face, and that point we consider in the next paragraph.

## II.

The tax deed was void for several reasons:

1. It was void on its face because it recites that the land was sold at an adjourned sale but does not recite that the adjournment was within the provisions of the law. Its recitals in these respects were: "And, whereas, the city treasurer of said Kansas City did, on the 6th day of November, A. D. 1897, by virtue of the authority in him vested by law, at (an adjourned sale) the sale begun and publicly held on the first Monday of November, A. D. 1897, the first day on which said real property was advertised for sale, expose to public sale at the office of the city treasurer," etc. We take judicial notice of the calendar, and we know that the first Monday in November, 1897, was November

1, 1897, and that November 6, 1897, was Saturday. This deed first recites that the sale was on the 6th day of November, then that it was "at (an adjourned sale)," and then that the adjourned sale was "begun and publicly held on the first Monday of November, A. D. 1897," that is, on November 1st. Some of these recitals are false.

The charter of Kansas City, in section 37 of article 5, says that "on the first Monday in November of each year the city treasurer shall offer at public sale . . . all real property on which taxes shall remain due and unpaid." Section 40 says that on said day the sale shall begin and "continue from day to day . . . as long as there are bidders, . . . selling not less than one tract each day until all of said property is sold." Section 44 says that "when all parcels of real property advertised for sale shall have been offered, and any portion thereof shall remain unsold for want of bidders, the city treasurer shall adjourn the sale to some day not exceeding two weeks from the time of the adjournment, notice of which shall be given at the time of adjournment and also by keeping a notice thereof posted in a conspicuous place in his office."

It will be observed that this deed says that the property was sold at "an adjourned sale," but it does not state on what date the sale was adjourned, nor the reason for the adjournment, nor that notice of the adjournment was given at the time of the adjournment, nor that notice of said adjournment and the day to which was kept posted in a conspicuous place in the office of the city treasurer. For aught we know from the recitals of this deed the sale or sales were begun on Monday, November 1, 1897, and then, without notice of any kind, were on that day adjourned over until Saturday, November 6th.

In Gregg v. Jesberg, 113 Mo. 34, this court held in judgment a tax deed very similar to the one now

being considered, and the sale was made in pursuance to statutes which are in almost the exact words of the sections of the charter under which this sale was made. In that case GANTT, P. J., speaking for Division Two of this court, said:

"Section 4735 provides that when all the property advertised shall have been offered, and any portion remains unsold for want of bidders, 'the collector shall adjourn the sale to some day *not exceeding two weeks from the time of adjournment, due notice of which shall be given at the time of adjournment,* and by keeping a notice posted in a conspicuous place in his office.'

"That a tax deed must show a substantial compliance with the form prescribed by the Legislature, and recite the prerequisites to a sale prescribed by the statute, is the settled law of this State. [Spurlock v. Dougherty, 81 Mo. 171; Large v. Fisher, 49 Mo. 307.]

"This deed on its face discloses that the sale was *an adjourned sale* on the *twentieth day of January,* 1887, the regular sale having been begun on the first Monday in November, 1886. It is contended by plaintiff that this deed is an exact compliance with the statute.

"The form in section 4750, Revised Statutes 1879, contains in brackets the words 'an adjourned sale,' and this deed without the brackets contains those words. Now those words were evidently placed in the form to indicate that when the sale was an adjourned sale the collector should recite the adjournment and the recital to be valid should recite an adjournment within the provisions of the law. The Legislature in its wisdom provided these adjournments should not extend beyond two weeks, and that due notice should be given of the adjourned sale. A sale made at a sale adjourned more than two weeks would unquestionably be void, and a sale so made without notice of such adjournment would also be void. When then a deed on

its face discloses it was at an adjourned sale made nearly three months after the sale commenced, and no recitals are made affirmatively showing the adjournments did not exceed the two weeks prescribed by law, we think the deed fails to recite a substantial prerequisite and condition precedent to a lawful adjourned sale, and it must be held void. To hold otherwise we must indulge the presumption that the law was complied with in all respects, and to do this we must disregard the rule invariably adopted in regard to such sales. [Yankee v. Thompson, 51 Mo. 234; Lagroue v. Rains, 48 Mo. 536; Sullivan v. Donnell, 90 Mo. 278.]

"In Sullivan v. Donnell, supra, the deed contained the recital, *'which sale was continued from day to day up to and including the tenth day of November,* 1877.' This was a substantial compliance with the law. The law requires the sale to be continued 'from day to day,' unless adjourned for *'want of bidders.'*

"As the statute expressly provides that the adjournment shall only be taken for certain reasons, and specifically prescribes the length of the adjournment and the notice thereof, we cannot say these provisions are immaterial, and, as the lawmakers in making the form left a space to recite the adjournment, we conclude they intended those facts should be recited in said blank that alone authorized the adjournment, and that a lawful adjournment would be recited. [Hopkins v. Scott, 86 Mo. 144.]

"The deed is void on its face, and the court properly so declared."

That case cannot on principle be distinguished from this. If the deed there was void on its face for lack of a recital of notice of adjournment, then the deed in this case is void for the same reason. The statute which controlled the decision in that case contained a provision for notice of the adjournment in the same language as the charter in this case. The

deed in that case recited: "And whereas the city collector of said city of St. Joseph did, on the twentieth day of January, A. D. 1887, by virtue of the authority in him vested by law, at an adjourned sale of the sale begun and publicly held on the first Monday of November, A. D. 1886, the first day on which said real property was advertised for sale, expose to sale at the office of the city collector," etc. The statute, section 4750, Revised Statutes 1879, in that case prescribed a form of deed in the same words as the form prescribed by section 58 of article 5 of the charter of Kansas City, except that the words "city collector" are used in the statute, and the words "city treasurer" are used in the charter. In all other respects the two forms prescribed are exactly the same. In that case the sales were required to be begun on the first Monday in November, and the sale was on the 20th of January thereafter, and the deed contained no recital of a notice of the adjournment. Neither the statute (sec. 4735) nor the charter relieves the officer from giving notice of the adjournment of the sales, whether the adjournment be for five days or three months. It does not say that when the adjournment is for less than two weeks notice may be dispensed with. It says that in all cases of adjournment notice shall be given at the time of the adjournment. It does say that no adjournment shall be longer than for "two weeks from the time of adjournment," and that notice of said adjournment "shall be given at the time of said adjournment, and also by keeping a notice thereof posted in a conspicuous place" in the treasurer's office. In our opinion, it is necessary under this charter that a tax deed which recites that the sale was "at an adjourned sale" should also recite that notice of such adjournment was given at the time of the adjournment of the day to which such sales were adjourned, and that notice of such adjournment should also be kept posted in a conspicuous place in the office of the city treasurer,

and that unless such notice is given the deed is void on its face.

Defendant contends that there was in fact no adjournment and that the defect in the deed was only a clerical error in failing to strike out the words in parenthesis "at (an adjourned sale)." If we can disregard those words in the deed, why can we not disregard all other material words therein? Besides, the deed recites that the sales began on the first Monday in November, which was November the first, and that this sale was made on November 6th. If we strike out these words "at an adjourned sale," we must then assume that the sales were continued from day to day without adjournment until Saturday the 6th. We do not think we should make that assumption, in the face of the fact that the deed does not recite that the sale begun on November 1st was continued from day to day to and including the 6th, but does recite that the property was sold at an adjourned sale.

2. The deed being void on its face, the question of limitations is entirely out of the way, and we can go back of the deed, and consider the legality of the proceedings leading up to it.

The assessment of the property for taxes in this case was void, and the city treasurer had no right to offer the property for sale in 1897, and for that reason the tax deed he made is void, and any deed that might now be made would be void.

The charter, in section 14 of article 5, requires that "the assessor shall return on his assessment book of real property, in tabular form, each parcel of real estate subject to taxation, with the description and value thereof, in numerical order as to the lots and blocks;" and section 67 says that "in describing real estate for any purpose contemplated in this charter" lots or tracts "shall as far as practicable be described consecutively in any assessment, land tax book, notice, advertisement and book of sales."

It was shown in evidence in this case, and it was agreed by plaintiff and defendant in open court, that the land tax book of 1897 shows that the listing of the parcels or lots in Hurck's Subdivision of Guinotte Bluff begins on page 823 of said land tax book and begins with lot 42 and proceeds in numerical order to lot 63. The next lot in that book is lot 60 on page 825, and said lot 67, described in the petition and attempted to be described in this tax book, appears on page 834.

Sections 38 and 39 of article 5 of the charter require the city treasurer to give notice by publication in a daily newspaper of the property to be sold for delinquent taxes, and such notice must state the time and place of sale, "and contain a description, substantially the same as in the land tax book, of the several parcels of real property to be sold." The advertisement of the delinquent list for the year 1897, being the "Notice of Sale of Real Estate for Delinquent Taxes," on page 7 of the paper, under the heading of "Hurck's Subdivision Guinotte Bluff," shows that lot 67 comes after lots numbered from 70 to 122. In this advertisement or notice the land for sale under "Hurck's Subdivision of Guinotte Bluff" begins with lot 63; the next lot is lot 70, the next is another portion of lot 70, the next is lot 91, and so on down to lot 122. Then comes a portion of lot 61, then lot 66, then another portion of lot 66, and the next is lot 67, which is the property in suit.

It will be seen at once that this property was not listed "in numerical order" either in the land tax book, or in the notice of sale. In the land tax book lot 67 follows lot 70, and it appears on page 834, while lot 70 appears on page 825, and all lots between 42 and 63 appear in numerical order, beginning on page 823, and the next lot after 63 is lot 70 on page 825. Any man examining pages 823 to 825 of this land tax book would conclude that lot 67 had not been assessed

for taxes at all. He would have had to turn nine pages further before he found this lot. To hold that this was an assessment "in numerical order" is to wholly disregard the plain meaning of words.

· Nor is the notice or advertisement any the less invalid. The property in suit appears therein after lot 122. Lot 67 is not, therefore, described "consecutively" "in numerical order" in either the land tax book or advertisement notice. The assessment was in radical disregard of the positive requirements of the charter and was void; and, as the notice, which is an essential prerequisite to a valid sale, was nugatory, both it and the sale were void.

· It is proper to remember in this connection that the city treasurer did not sell this property for taxes pursuant to a judgment of court. The charter of Kansas City authorizes him to sell real estate against which taxes are due and delinquent without bringing suit and without any personal notice to the owner. The only notice he is required to give is by a publication "once in the daily edition of some newspaper of general circulation published in Kansas City," and then the newspaper "for a period of ten days immediately following such publication" shall cause a notice in large type to be inserted on its local page, "stating the day and date on which said publication was made." No other notice is required. The charter provisions requiring lots to be listed in the tax book and in the notice of publication "consecutively," "in numerical order," at once become of the highest value to the property-owner, for if the notice is misleading, as any notice would be that lists lot 67 after lot 122, then his property is taken from him without notice, which everywhere means without due process of law. The notice in this case amounted to no notice. The charter method for selling real estate for delinquent taxes is a harsh one, and the courts should not permit an owner's property to be taken from him in pursuance

thereof unless the requirement as to notice is strictly complied with.

## III.

Defendant contends that plaintiff is barred by laches from maintaining this suit, and he pleaded that defense at great length. He contends that plaintiff was entitled to a deed from the sheriff at the end of one year after the sale to satisfy the judgment for special taxes, but did not get one for seven years, and had in effect abandoned any claim to the property; that defendant went into possession under his tax deed and remained in possession for three years; that defendant has paid taxes on the property since 1893, and has paid over four hundred dollars in taxes, while plaintiff has paid only two hundred dollars in taxes; and that all the equities of the case are with defendant, and the judgment should not be reversed, although his tax deed is void.

The contention cannot be sustained on any of the grounds assigned, nor upon all of them taken together.

1. Plaintiff was in possession of the property at the time this suit was brought on October 13, 1903, and had been for three days. The evidence showed that when he took possession the property was vacant. Along one side, for a few feet, there were two wires stretched between trees and a few posts, but there was no evidence of enclosure or actual possession, and the only attempt that defendant made to show he was then in possession was that cows of his tenants grazed on this property. The most that the evidence shows on behalf of defendant is that he had an uncertain possession for about one year from the time he bought the property from Boyer in March, 1901. At the time he bought, the deed from Stone, the sheriff, to the Trust Company, and the deed from the Trust Company to plaintiff, were of record, and as such gave

him notice that plaintiff claimed to be the owner; and he testified himself that when he bought the property he made out three checks for the property, "one for the tax title, one to the International Loan & Trust Company, and one to King," against whom the taxes had been assessed, and who was a defendant in the judgment on the special taxbill; that he sent his agent, Tackett, to the Trust Company with the check, who was informed that the Trust Company had transferred its title to plaintiff, and that Tackett then went to plaintiff to get a transfer of his interest to defendant, but failing in that, defendant fenced the property by stringing two wires to trees and a few posts put loosely on top of the ground and braced up by stones and earth piled about them. The evidence shows that this fence had almost entirely disappeared when plaintiff took possession in October, 1903. Defendant made no other improvements of any kind on the property.

The basis of laches is delay in bringing suit, but it does not rest wholly on delay; the other party must have been injured by the delay; he must have been without knowledge of the other party's title, and being without such knowledge and relying upon his own apparent right to the property, he made lasting and valuable improvements which he would have been saved the expense of making had the other party taken timely action to assert his equitable right. [Bank v. Kennett, 101 Mo. App. l. c. 397.] In this case, defendant made no improvements, he had actual notice before he bought, that plaintiff was the owner of the title that had passed by the sheriff's sale under the judgment for special taxes, and in addition he must be held to have known that the tax deed under which he claimed was void on its face.

2. But defendant says he and Boyer paid taxes on the property after Boyer bought at the tax sale, from 1893 to 1903.

Defendant's evidence on this point is not satisfactory, but in his answer he says he or Boyer paid the city taxes for 1899 on January 22, 1899; the city taxes for 1900 on June 2, 1900; and city taxes for 1901 on June 18, 1901; and that he paid the state and county taxes for 1893, 1894, 1895, and 1896, on December 17, 1898; for 1899, on December 21, 1899; for 1900, on December 12, 1900. He does not show either by his answer or evidence, on what dates he paid taxes for the years subsequent to 1901—that is, subsequent to the time he bought from Boyer on March 30, 1901. Under the charter of Kansas City unpaid city taxes become delinquent on September 1st, but may be paid at any time after the 10th of May, and if paid during the month of May a rebate of six per cent is allowed; if paid during the month of June, a rebate of four per cent; and if paid during the month of July, a rebate of two per cent. Plaintiff testified that on several occasions he went to the tax collector's office before taxes became delinquent, and made request that he be allowed to pay the taxes assessed against this property, but found that they had already been paid by someone else, and this testimony was uncontradicted. Defendant gave no explanation of why he or Boyer paid the city taxes so early in the year they became due. It may have been to secure the rebate or in an imaginary attempt to perfect title. But whether it was done for one purpose or the other, certainly plaintiff's failure to pay the taxes under such circumstances does not convict him of neglect in failing to pay them. Under such circumstances the plea set up in defendant's answer that "plaintiff permitted defendant and those under whom he claims to pay all the taxes of every kind on said land since 1893" is not sustained. If defendant or Boyer paid the taxes for those years, they did so voluntarily, and seemed to have been anxious to do so and even to forestall plaintiff from paying them. If the statements set up

in defendant's answer are true he or Boyer paid the city taxes for 1898 and 1899, and the state and county taxes from 1893 to 1898, before the tax deed was executed to Boyer on December 18, 1899. Under the charter of Kansas City the owner had two years, or until November 1, 1899, to redeem the property from the tax sale. All these facts indicate that Boyer was paying the taxes at a time when he did not know whether or not he would ever get a deed, and if defendant paid them before he bought from Boyer on March 30, 1901, he was a pure volunteer. There is nothing in these facts to indicate laches.

3. But defendant says that plaintiff's "neglect to get a deed for nearly seven years . . . from the only person authorized to make a deed in pursuance of said certificate of purchase" must be held to be an abandonment by the Trust Company and by plaintiff of any claim to the property, and therefore the rules of laches apply.

The property was owned by Thomas King, and a judgment against him was rendered on a special tax-bill for a sewer in the sum of $2582, and made a special lien on the property in suit. Execution was issued on that judgment and the property sold on December 5, 1896, to the International Loan & Trust Company, and to it was issued a certificate of purchase, and that certificate was recorded on February 10, 1897, as the charter requires. Under the charter King had one year in which to redeem the property, and if he did not do so the Trust Company was entitled to a deed. The sheriff who sold the property in December, 1896, was John P. O'Neill. Before the deed was made, Robert S. Stone had become sheriff, and on January 18, 1899, he executed a sheriff's deed to the Trust Company and that deed was duly recorded. On November 12, 1900, the Trust Company conveyed the property to plaintiff, by a deed duly recorded. In the meantime the property had been sold on November

16, 1897, under a tax assessment for the taxes for
1897, to I. P. Boyer, and a tax deed was made to him
by the city treasurer on December 18, 1899. In Sep-
tember, 1901, plaintiff brought suit in ejectment against
defendant, to whom Boyer had deeded the property
on March 30, 1901. When that suit came to trial in
October, 1902, the trial judge ruled that Stone, the
sheriff in office, had no power to make a deed to the
Trust Company, but that such deed should have been
made by the same sheriff (O'Neill) who made the sale in
December, 1896, although O'Neill was out of office
when the deed was made, and had been for sometime.
Thereupon the plaintiff took a nonsuit, obtained a deed
from O'Neill, as ex-sheriff, and on the 13th of October,
1903, brought this suit. It is from these facts that
defendant deduces his conclusion that "no deed was
obtained from the only party authorized to make a
deed in pursuance to the certificate of purchase   .   .   .
for nearly seven years   .   .   .   after the certificate
of purchase was issued on December 5, 1896," and,
therefore, plaintiff and his grantor must be held to
have abandoned any claim to said property by reason
of said certificate.

    Section 18 of article 9 of the charter, among other
things says: "If the property so sold be redeemed
within one year from the date of such sale by pay-
ment to the sheriff of the amount due on said judgment,
including interest and costs up to the date of redemp-
tion, by the owner of or party interested in said prop-
erty, no deed shall be given by the sheriff.   .   .   .   If
the lot or parcel of land so sold be not redeemed, as
herein provided, a deed shall be given at the end of
one year from the date of said sale by the sheriff to
the holder of said certificate. Such deed may be given
to the original holder of such certificate or his as-
signee and shall vest all the right, title, interest and
estate in the land so sold that defendants and each
of them owned at the time the lien or the taxbill com-

menced. Such certificate of purchase shall be delivered by the sheriff to the purchaser or his assignee, on payment of the amount bid, which certificate shall be executed and acknowledged by such sheriff ' . . . and shall be filed for record in the office of the recorder of deeds.'' In our opinion this language contemplates that the deed shall be made by the sheriff in office at the time it is made, and that the trial judge in the ejectment suit erroneously ruled that Stone did not have power to make the deed, but that it could be made only by O'Neill, who was not then in office. The language does not vest the title in the sheriff, it simply vests the officer with a power, and that power is to be executed by the sheriff in office at the time it is exercised. The power pertains to the office and not to the man. If the ex-sheriff can make the deed he should also have the right to receive the money paid by the owner for a redemption of the land, and this language says that payment is to be made to the sheriff. Any man who proposed to redeem, having first read this language, would first look up the sheriff then in office. If the redemption money is paid to the ex-sheriff, would his bondsmen be responsible for its proper application? It will be seen at once that numerous complications might arise, if it is held that only the sheriff who makes the sale can make the deed. None will arise, if it is held the language means that the power pertains to the officer.

We have not overlooked section 3216, Revised Statutes 1899, which says that when any officer shall have levied execution and his term ''shall expire and be determined before or after the sale thereof, and before the purchaser shall have obtained a deed therefor,'' he ''shall, nevertheless, have power'' to execute a deed. That statute contemplates an emergency, and it gives the ex-officer power to carry to completion a judicial sale begun by him, and a deed made by him under the circumstances therein detailed would not be

void. Yet it contemplates a very different situation from the one outlined in the charter. Under the charter, after sale under execution, the sheriff can do nothing for one year. Everything thereafter to be done, can be done in a regular and orderly way by his successor. We think Stone had the power to make the deed, and as it was openly admitted in open court that King was the owner at the time the suit was brought and judgment was rendered against him on the special taxbill, the Stone deed was a valid deed and conveyed the title to the Trust Company.

Plaintiff and his grantor did not, therefore, neglect for seven years to obtain a deed in pursuance to the certificate of purchase. The Stone deed was dated January 18th, and recorded January 31, 1899, and the certificate of purchase was dated December 5, 1896, and recorded February 10, 1897. Under the charter if the property "be not redeemed . . . a deed shall be given at the end of one year from the date of said sale." The earliest date at which the Trust Company or its assignee was entitled to a deed, therefore, was December 5, 1897. Prior to that date, and on November 6, 1897, the property had been sold for the taxes for 1897. The deed from Stone to the Trust Company was dated January 18, 1899; it was, therefore, made one year, one month and thirteen days after the Trust Company had a right to a deed. Up to the time it was made, and in fact not until 1901, neither Boyer nor defendant had taken possession of the land or made any improvements thereon, or in anywise exercised any act of ownership thereover, except that either Boyer or defendant, according to their answer, had paid the city, state and county taxes for 1897 and 1898, and had paid the state and county taxes from 1893 to 1896. We do not think the Trust Company's failure to get its deed from the sheriff for something over thirteen months was such delay as constituted its act laches, nor do we think that delay taken in connection

with the payment of taxes by defendant or Boyer so materially misled either of them to his injury as to constitute laches, nor did the delay constitute an abandonment by the Trust Company of its rights under the certificate of purchase. There is no such laches in this case as bars plaintiff from maintaining this suit.

We have pursued the subject far, because it is said in the briefs that it was on the theory of laches that the case was decided against plaintiff in the trial court, and because the point is urged with such strenuous persistency by respondent in this court. But after mature consideration, we can see no laches in the case.

## IV.

Appellant contends that no adjustment of tax payments can be made in this case. As the judgment was for defendant, of course it recites no adjustment of that kind. Yet as the judgment must be reversed and the cause remanded that subject should be considered. Plaintiff offers in his petition "to refund to the defendant all of the legal taxes paid by defendant, or those under whom he claims," and the defendant in his answer avers that he has paid taxes for certain years.

This is a suit under section 650 to ascertain and determine the title, and the appellant contends that the court is limited, by this statute, to "a decision upon the title solely." In Seidel v. Cornwell, 166 Mo. l. c. 55, the court held that in such a suit there could not be an accounting for rents and profits. In Wilson v. Lubke, 176 Mo. l. c. 217, there was an unquestioned right to a mechanic's lien, but the court held that the lien could not be enforced in a suit under this statute to quiet the title. In Rowe v. Current River Co., 99 Mo. App. l. c. 163, the court said: "The bare or latent equity of the holder of an invalid tax deed or title is lifeless and non-enforceable without express statu-

tory recognition, and in the absence of such legislation the lien of the State does not pass and the doctrine of subrogation is not applicable to the tax-title purchaser. As to the purchase price representing the taxes for which the sale is made, he has bought at his own peril and the doctrine of *caveat emptor* is rigidly applied, and as to such amounts as he may pay for taxes thereafter accruing, he is treated as a mere volunteer seeking to obtrude as a creditor, to whom relief will be denied even in equity.''

But there is a late statute bearing on the subject. By the act approved March 16, 1903, Laws 1903, p. 254, it is provided: ''No suit or action in any of the courts of this State, either at law or in equity, shall hereafter be maintained by any person or corporation, against any other person or corporation, for the determination of the title to, or for the recovery of the possession of, any lands, which shall have been sold for taxes, or any interest in any such lands, or for the setting aside, or cancellation of any tax deed or sale of land for taxes, alleged to have been void, voidable or defective, unless such person or corporation so seeking to recover such lands, or some interest therein, or the setting aside of such tax deed or tax sale, shall in his petition offer to refund to the defendant therein, or to such other person, or corporation, from whom, and against whom, such recovery is sought in such action, all taxes paid by such defendant, or other persons, and his grantors, remote or immediate, or by those under whom he claims, together with interest thereon from the date of payment of such taxes to the date of the judgment in such action. . . . All courts before which any such action may be brought or maintained shall, if the judgment in such action be adverse to the defendant or defendants therein, and the recovery of such land, or any interest therein, be adjudged or decreed, find and adjudge by its decree or judgment the amount of money due to the defend-

ant, or to other persons, on account of taxes or interest thereon paid as aforesaid by defendant or his grantors as aforesaid, and all such courts may, if such relief be prayed for in the answer, or the other pleading of the defendant or other person entitled to reimbursement, adjudge and decree that the amount so found by the court, or a jury, shall be and constitute a lien upon the lands recovered or in controversy.''

This is a very broad statute. It is so plain that it needs little discussion. If it is consistent with the constitutional provisions that the property of no one can be taken except by due process of law, there is nothing left for us to do except to apply it in this case, for it was in force when this suit was brought. We think it is consistent with that constitutional provision. The taxing power may be exercised by municipal corporations. [Constitution, art. 10, sec. 1.] All property, except such as is specifically exempted by law, is subject to taxation. [State ex rel. v. Mission Free School, 162 Mo. 332.] A tax against real estate is a tax against the property, and not against the owner. If the taxes have been legally assessed, they become a lien on the property prior to all other liens. The state and county taxes for the years 1893 to 1898 were not barred by limitations when they were paid on December 17, 1898. [R. S. 1899, sec. 9313.] The State could have enforced its taxes for those years, if they were legally assessed, ''no matter who was the owner at the time the assessment was made.'' [R. S. 1899, sec. 9324.] The property in this case should bear its proportionate share of legal taxes, and having been paid we think that under the Act of 1903 appellant should reimburse defendant for those taxes paid by him in good faith, and those paid by Boyer in good faith to which defendant has become subrogated. But we do not think appellant should be required to reimburse defendant for any taxes paid by defendant after March 30, 1901, up to the time of the trial. Defendant,

himself, testified that when he bought the property from Boyer he made out three checks, one of them to the Trust Company, and sent Tackett with it to the company to buy its interest, but that Tackett was informed that plaintiff had taken up the Trust Company's title, and then he went to plaintiff and tried to buy from him and failed. He then knew that plaintiff was the owner, and in paying taxes thereafter he was a mere volunteer.

The judgment is reversed and the cause remanded with directions to the trial court to take an account for taxes paid by Boyer and defendant; to exclude from said accounting all taxes paid by defendant since March 30, 1901, up to the time of the trial, and all taxes paid by Boyer to which defendant has not become subrogated; to allow defendant a judgment for all other taxes (state, county and city) paid by Boyer or defendant, with six per cent interest thereon from date of payment; and to make said judgment a lien on said property; to render judgment for plaintiff adjudging and decreeing the title of the property to be vested in him, according to the views herein expressed, upon the payment of said judgment and lien for taxes within a reasonable time to be fixed by the court, and upon the payment of said judgment for taxes the tax deed to Boyer is held for naught, and all right, claim or interest of defendant in said lot is for naught held; and upon plaintiff's failure to pay said judgment lien for taxes within the time fixed by the court he is to take nothing by the judgment decreeing the title to be in him.

We have given no direction as to the taxes paid since the trial and judgment in the circuit court, whether paid by plaintiff or defendant, since that is a matter not at present embraced within the pleadings. All concur.